James D. Weinberger (jweinberger@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
Fax: (212) 813-5901

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 1979 FAMILY TRUST LICENSOR, LLC and ROCKEFELLER & CO. LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> MEHAL J. DARJI aka MEHAL ROCKEFELLER and ROCKEFELLER MANAGEMENT CO., <br><br> *Defendants*. | |

**COMPLAINT**

Plaintiffs 1979 Family Trust Licensor, LLC (the "Trust") and Rockefeller & Co. LLC ("Rockefeller & Co." and, together with the Trust, "Plaintiffs"), by their undersigned attorneys, for its Complaint against Defendants, alleges as follows:

**NATURE OF THE ACTION**

1.     Rockefeller & Co. LLC, the successor to the Rockefeller family office, is an investment management and wealth advisory firm and the exclusive licensee of the Trust's ROCKEFELLER trademark in connection with a wide range of financial and accounting services. Despite the undeniable fame of the ROCKEFELLER name and despite having actual and constructive knowledge of Plaintiffs' rights in the ROCKEFELLER trademark, Defendant

{F2941484.3 }

Mehal J. Darji – an individual without any connection to the Rockefeller family – adopted the last name Rockefeller and formed a corporation named Rockefeller Management Co. Under those false pretenses, and without authorization or permission from Plaintiffs, Defendants have further adopted for themselves the ROCKEFELLER name as a trademark for their alleged financial services business operated from the domain name rockefellermanagement.com.

2. Such use of the ROCKEFELLER mark by Defendants impermissibly creates an association between Plaintiffs and Defendants in the minds of consumers and dilutes the ROCKEFELLER trademark. As a result, to protect the goodwill that Plaintiffs have established in the ROCKEFELLER mark, Plaintiffs bring this action for (i) trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (ii) unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (iv) cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); (v) trademark infringement and unfair competition under the common law of New York; and (vi) trademark dilution under New York law. Plaintiffs seek injunctive relief, an accounting of Defendants' profits flowing from its use of the infringing mark, damages, attorneys' fees, and such other relief as the Court deems just and proper.

## THE PARTIES

3. The Trust is a limited liability company organized and existing under the laws of the State of Delaware, with offices at 9 West 57th Street, Suite 4700, New York, NY 10019.

4. Rockefeller & Co. is limited liability company organized and existing under the laws of the State of Delaware, with offices at 45 Rockefeller Plaza, New York, NY 10111.

5. Upon information and belief, Defendant Mehal J. Darji ("Darji") is an individual residing at 32 Santalina Drive, Sicklerville, NJ 08081. Darji sometimes uses the name Mehal Rockefeller.

6. Upon information and belief, Defendant Rockefeller Management Co. is a corporation organized and existing under the laws of the State of New Jersey, with an address at 32 Santalina Drive, Sicklerville, NJ 08081 and, according to the rockefellermanagement.com website, at One Rockefeller Plaza, 11th Floor New York City New York 10020.

## JURISDICTION & VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b). The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants regularly do and solicit business within this State.

9. Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b), (c), in that a substantial part of the events giving rise to the claim, including, but not limited to, Defendants' marketing, promotion, advertising, and offering for sale of services in violation of Plaintiffs' exclusive rights in the ROCKEFELLER mark occurred in this District, Defendants purport to have an office in this District, and Defendants are subject to personal jurisdiction in this State.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**A.      Rockefeller & Co. and the ROCKEFELLER Mark**

10.     Rockefeller is one of the most prominent families and names in the United States and is highly regarded throughout the world.  The Cleveland family of John D. Rockefeller (1839-1937) is an American industrial, financial, and political dynasty that made one of the world's largest private fortunes in the oil business during the late 19th and early 20th centuries.

11.     In 1882, John D. Rockefeller established an office to manage his family's assets, as well as to create and sustain wealth for future generations.  The office provided investment management and financial counseling services for the Rockefellers and related organizations.

12.     Starting in 1979, Rockefeller & Co., the successor to this office, expanded these investment management and wealth advisory services by offering them to the general public. Rockefeller & Co. registered with the Securities and Exchange Commission as an investment adviser in 1980 and chartered trust companies in New York and Delaware in 1985 and 1997, respectively. The New York trust company was converted to a national charter in 2009.

13.     From that time until March 2018, Rockefeller & Co., through its affiliated companies, offered wealth planning, investment management, investment advice, trust services, family office services and information management of the large volume of financial data associated with these services to wealthy individuals and families, family offices, trusts, endowments, foundations, not-for-profit organizations and other institutions.

14.     In March 2018, Rockefeller & Co. was purchased by a group that included the broader Rockefeller family, the firm's new management, and investment funds managed by Viking Global Investors LP as part of the launch of a new venture, Rockefeller Capital Management L.P. ("RCM").   RCM is an independent financial services firm led by former

Morgan Stanley executive Greg Fleming, offering, *inter alia*, wealth management, asset management and strategic advisory services to the public. As part of the transaction, the Trust was formed to keep the Rockefeller name under the control of the Rockefeller family and the ROCKEFELLER trademarks were licensed to Rockefeller & Co. on an exclusive basis, thus ensuring continuity in the use of the ROCKEFELLER name.

15. As of January 2019, Rockefeller & Co. and its affiliated companies, including but not limited to RCM, had assets under advisement of more than $18 billion.

16. As a result of decades of use, a substantial investment in promoting its services, and a high volume of wealth managed by Rockefeller & Co., ROCKEFELLER has acquired enormous value and has become famous among the consuming public and trade as identifying and distinguishing Plaintiffs exclusively and uniquely as the source of services available under or bearing ROCKEFELLER.

17. In addition to the rights built up through its extensive use of the ROCKEFELLER mark for decades, the Trust is the owner of U.S. Trademark Reg. No. 3,809,398 for ROCKEFELLER and Reg. No. 3,414,179 for ROCKEFELLER & CO, both based on first use in 1979 for the following services:

> "Financial services, namely, financial consultation, financial planning, financial portfolio management, investment of funds for others, financial and investment information management for others, and management of capital investment funds, hedge funds, private equity funds and other collective investment vehicles; investment consultation; investment management and advisory services for discretionary and non-discretionary domestic and foreign accounts for high net worth individuals, corporations, partnerships, limited liability companies, charitable institutions, trusts and estates; investment supervisory services in connection with open architecture programs, namely, financial planning, conducting financial reviews, investment advice, asset allocation, and financial analysis and consultation; trust services, namely, investment services; estate planning; bill payment services; administration of employee benefit plans" in International Class 36; and

"Accounting services; tax and taxation planning, advice, information and consultancy services; tax preparation and filing services; personal budget preparation; business management and advice; human resources consultation" in International Class 35.

18.     The above-listed registrations are valid, subsisting, in full force and effect and constitute prima facie evidence of the validity of the mark and of the Trust's ownership and exclusive right to use the marks in connection with the identified services pursuant to § 7(b) of the Lanham Act, 15 U.S.C. § 1057(b).  Moreover, these registrations are incontestable pursuant to § 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the Trust's ownership of the ROCKEFLLER & CO and ROCKEFLLER marks and of its exclusive right to use the marks in commerce in connection with all of the services identified in the aforementioned registrations.  *See* 15 U.S.C. § 1115(b).  Attached hereto as **Exhibit A** are true and correct printouts from the U.S. Patent and Trademark Office database reflecting these registrations.  As a matter of law, these registrations serve to place Defendants on constructive notice of Plaintiffs' rights in the ROCKEFELLER and ROCKEFELLER & CO marks.  *See* 15 U.S.C. § 1072.

**B.     Defendant's Wrongful Activities**

19.     Upon information and belief, Darji, an individual who masquerades under the name Mehal Rockefeller, is a principal of and the controlling stakeholder in Defendant Rockefeller Management Co., despite the fact that Darji has no connection to the Rockefeller family or Plaintiffs.

20.     According to the website, Defendant Rockefeller Management Co. is a financial services business.

21.     In operating their purported financial services business, Defendants have adopted without authorization a trade name including ROCKEFELLER, namely, RCM's ROCKEFELLER CAPITAL MANAGEMENT name and mark.

22. In connection with this endeavor, Defendants are also using the ROCKEFELLER mark in connection with the domain name for its website, namely *rockefellermanagement.com*. Screenshots from the website are attached hereto as **Exhibit B**.

23. Upon information and belief, while the website located at *rockefellermanagement.com* purports to identify a business address at One Rockefeller Plaza in New York City, the business is in fact not real or legitimate and instead appears to be a scam intended to induce consumers to share confidential financial information. Similarly, as of the date hereof, the phone number listed on the website does not accept calls.

24. Defendants are not associated or affiliated with Plaintiffs and have never been authorized or otherwise licensed to use the ROCKEFELLER mark or any other confusingly similar variation thereof in connection with the sale or offering for sale of any services.

25. The services Defendants purport to offer under the ROCKEFELLER mark are not provided or approved by Plaintiffs.

26. Defendants' use of ROCKEFELLER began long after Plaintiffs first began using their name in connection with financial services and long after such names became famous and associated exclusively with Plaintiffs.

27. Defendants had actual notice of Plaintiffs' rights to and interest in the ROCKEFELLER mark and, indeed, upon information and belief, chose to use the ROCKEFELLER mark in connection with its financial services business because of the very fame and connection of the ROCKEFELLER name and mark in the financial services industry.

28. As a matter of law, Defendants were on constructive notice of Plaintiffs' rights in the ROCKEFELLER and ROCKEFELLER & CO marks based on the Trust's registrations therefor.

29. Accordingly, Defendants' unauthorized use of the ROCKEFELLER mark is with a deliberate intent to ride on the goodwill of Plaintiffs' ROCKEFELLER and ROCKEFELLER & CO marks and with the deliberate intent to create a false impression as to the source or sponsorship of Defendants' services.  The goodwill that Plaintiffs have built up in their brand through years of substantial investment and effort is put at risk by virtue of Defendants' appropriation of the ROCKEFELLER mark to sell and advertise their own services.

30. Defendants' acts are likely to injure Plaintiffs' goodwill and reputation.  The use by Defendants of the ROCKEFELLER mark unfairly and unlawfully wrests from Plaintiffs control over their valuable trademarks and reputation.  Plaintiffs have no control over the quality of Defendants' services.  As a result, Plaintiffs' extremely valuable reputations are put in jeopardy and may be permanently damaged.

31. Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Plaintiffs' business and goodwill unless restrained by this Court.

32. Plaintiffs objected to Defendants' conduct through a cease and desist letter. Defendants refused to cease their activities unless Plaintiffs paid them millions of dollars, effectively holding Plaintiffs' valuable trademarks and goodwill associated therewith for ransom.

### FIRST CLAIM FOR RELIEF: <br> FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

33. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 32 as if fully set forth herein.

34. Defendants' offering, advertising and providing of financial services under the ROCKEFELLER mark is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' services.

35. As a result of Defendants' unauthorized use of the Trust's federally registered ROCKEFELLER marks, consumers of Defendants' financial services are likely to believe that Defendants' services have been approved by or are otherwise associated with Plaintiffs.

36. Such use falsely represents Defendants as being legitimately connected with and/or authorized by Plaintiffs, and places beyond Plaintiffs' control their own reputations and ability to control the use of the ROCKEFELLER marks or the quality of the services bearing those marks.

37. Defendants' infringement of the Trust's registered marks is willful, intended to reap the benefit of the goodwill of Plaintiffs, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

38. Defendants' aforesaid conduct is causing irreparable injury to Plaintiffs and to their goodwill and reputation, and will continue both to damage Plaintiffs and deceive and threaten harm to the public unless permanently enjoined by this Court.

39. Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

40. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 39 above as if fully set forth herein.

41. Defendants' use of ROCKEFELLER for services that are related and/or substantially similar to those offered by Plaintiffs under ROCKEFELLER constitutes a false designation of origin and a false representation as to the origin of Defendants' services. Defendants' use of ROCKEFELLER in connection with their financial services business is likely to cause confusion, mistake, or deception as to the source of Defendants' services and is likely to

create the false impression that those services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiffs.

42. Defendants' conduct is willful, intended to reap the benefit of the goodwill of Plaintiffs, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

43. Defendants' conduct has caused and is causing irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and deceive the public unless enjoined by this Court.

44. Plaintiffs have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF:
### FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))

45. Plaintiffs repeat and reallege paragraphs 1 through 44 above as if fully set forth herein.

46. As a result of extensive use and promotion of the ROCKEFELLER mark and the services offered thereunder by Plaintiffs for decades, the ROCKEFELLER marks are famous throughout the United States, are highly distinctive of Plaintiffs' services and are widely recognized among the consuming public as designations of source of Plaintiffs' services. The ROCKEFELLER marks became famous long before Defendants commenced their unauthorized use of the ROCKEFELLER mark as described herein.

47. Defendants' commercial use of the ROCKEFELLER mark is likely to dilute Plaintiffs' famous ROCKEFELLER marks by impairing the distinctiveness of the ROCKEFELLER marks, thereby lessening the capacity of those mark to identify and distinguish Plaintiffs exclusively.

48. Upon information and belief, the foregoing acts were done willfully and deliberately, commencing long after Plaintiffs' ROCKEFELLER marks became famous, and with an intent to reap the benefit of Plaintiffs' goodwill and dilute the distinctiveness of

Plaintiff's ROCKEFELLER marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

49. Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiffs and will continue to damage Plaintiffs unless enjoined by this Court.

50. Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF:
## VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT
## (15 U.S.C. § 1125(d))

51. Plaintiffs repeat and reallege paragraphs 1 through 50 above as if fully set forth herein.

52. Plaintiffs' ROCKEFELLER marks were distinctive at the time of Defendants' registration of the *rockefellermanagement.com* domain name.

53. Without authorization from Plaintiffs or any other related entity, Defendants have registered, trafficked in, and/or used the domain name *rockefellermanagement.com*, which is confusingly similar to the Trust's federally registered ROCKEFELLER marks.

54. Defendants had full knowledge of Plaintiffs' prior rights in the ROCKEFELLER marks when they secured a registration for the infringing domain name *rockefellermanagement.com*.

55. Defendants have registered, trafficked in, and/or used the infringing domain name *rockefellermanagement.com* with the bad faith intent to profit from the ROCKEFELLER marks. Upon information and belief, *rockefellermanagement.com* has been used by Defendants with the bad faith intent to reap the benefit of the goodwill in the ROCKEFELLER marks, to divert consumers to Defendant's website for its own commercial gain, and to otherwise profit from

unauthorized use of the ROCKEFELLER marks, including by attempting to sell the *rockefellermanagement.com* to Plaintiffs.

56. The aforesaid acts and conduct constitute cyberpiracy in violation of the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

57. The unauthorized registration and use of the *rockefellermanagement.com* domain name is causing immediate and irreparable injury to Plaintiffs and to the goodwill and reputation of the ROCKEFELLER marks, and will continue to damage Plaintiffs and the ROCKEFELLER marks unless the Court enjoins such use and transfers registration of the *rockefellermanagement.com* domain name to Plaintiffs.

58. Plaintiffs have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF:
TRADEMARK INFRINGEMENT AND
<u>UNFAIR COMPETITION UNDER NEW YORK COMMON LAW</u>**

59. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 58 above as if fully set forth herein.

60. Defendants' use of ROCKEFELLER in connection with their financial services business is likely to confuse the public as to the origin, source or sponsorship of Defendants' services, or to cause mistake or to deceive the public into believing that Defendants' services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiffs, in violation of Plaintiffs' rights in the ROCKEFELLER mark under the common law of the State of New York.

61. Upon information and belief, Defendants chose ROCKEFELLER with full knowledge of Plaintiffs' prior use of and rights in ROCKEFELLER. By adopting and using a

colorable imitation of ROCKEFELLER, Defendants have been unjustly enriched and Plaintiffs have been damaged.

62. By misappropriating and trading upon the goodwill and business reputation represented by the ROCKEFELLER mark, Defendants have been and, unless enjoined by this Court, will continue to be unjustly enriched at Plaintiffs' expense.

63. Defendants' conduct constitutes trademark infringement and unfair competition under the common law of the State of New York.

64. Defendants' conduct has caused and is causing irreparable injury to Plaintiffs and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.

65. Plaintiffs have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF:
## DILUTION UNDER NEW YORK LAW (N.Y. General Business Law § 360-*l*)

66. Plaintiffs repeat and reallege paragraphs 1 through 65 above as if fully set forth herein.

67. As a result of extensive use and promotion of the ROCKEFELLER marks and the services offered thereunder by Plaintiffs, the ROCKEFELLER marks are highly distinctive of Plaintiffs' services and are widely recognized among the consuming public as designations of source of Plaintiffs' services. The ROCKEFELLER marks were distinctive and widely known long before Defendants commenced their unauthorized use of ROCKEFELLER as described herein.

68. Defendants' commercial use of ROCKEFELLER is diluting Plaintiffs' famous ROCKEFELLER marks by impairing their distinctiveness, thereby lessening the capacity of those marks to identify and distinguish Plaintiffs exclusively, in violation of Section 360-*l* of the General Business Law of the State of New York.

69.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiffs and will continue to both damage Plaintiffs and to deceive the public unless enjoined by this Court.

70.     Plaintiffs have no adequate remedy at law.

*     *     *

**WHEREFORE**, Plaintiffs respectfully demand judgment as follows:

**1)**     That a permanent injunction be issued enjoining Defendants and any of their officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or in part by Defendants, in any jurisdiction in which they operate, from:

>   (a) imitating, copying or making unauthorized use of the mark ROCKEFELLER, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of the ROCKEFELLER mark, including but not limited to ROCKEFELLER MANAGEMENT and ROCKEFELLER CAPITAL MANAGEMENT (any such mark, a "Prohibited Mark"), in or as part of any corporate name, trademark, service mark, domain name, trade name, business name, fictitious name, or otherwise presenting any name that includes in whole or in part a Prohibited Mark on or in connection with any goods, businesses or services offered by Defendants or the advertising or promotion thereof;
>
>   (b) using a Prohibited Mark to refer to or describe any products, goods or services offered by or on behalf of Defendants or any individual, entity or other third party affiliated with Defendants;

    (c) using a Prohibited Mark in or as part of any domain name, keyword, metatag, source code or other Internet search term, or otherwise using a Prohibited Mark on or in connection with any website owned or controlled by Defendants;

    (d) applying to register or registering in the United States Patent and Trademark Office, or in any state trademark registry, any Prohibited Mark;

    (e) using a Prohibited Mark in connection with the promotion, advertisement, sale, offering for sale or the provision of any goods or services;

    (f) engaging in any other activity constituting unfair competition with Plaintiffs or constituting an infringement of the ROCKEFELLER mark; or

    (g) instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

**2)** Directing that Defendants deliver up to Plaintiffs' attorneys for destruction all signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials currently in their possession or under their control, incorporating, featuring or bearing ROCKEFELLER or that incorporate, feature or bear any simulation, reproduction, copy, colorable imitation or confusingly similar variation of the ROCKEFELLER marks.

**3)** Directing that the *rockefellermanagement.com* domain name be transferred to Plaintiffs.

**4)** Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any service offered or promoted by Defendants are authorized by Plaintiffs or related in any way to Plaintiffs or that Defendants are otherwise affiliated with Plaintiffs.

**5)** Directing that Defendants file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

**6)** Awarding Plaintiffs such damages they have sustained or will sustain by reason of Defendants' acts of trademark infringement, dilution and unfair competition.

**7)** Awarding Plaintiffs all gains, profits, property and advantages derived by Defendants from their unlawful conduct and, pursuant to 15 U.S.C. § 1117, awarding Plaintiffs an amount up to three times the amount of actual damages sustained as a result of Defendants' violation of the Lanham Act and including but not limited to, at Plaintiffs' election prior to final judgment, an award of statutory damages for Defendants' violation of section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

**8)** Awarding to Plaintiffs exemplary and punitive damages to deter any further willful trademark infringement as the Court finds appropriate.

**9)** Awarding to Plaintiffs their costs and disbursements incurred in this action, including reasonable attorneys' fees.

**10)** Awarding to Plaintiffs interest, including pre-judgment interest on the foregoing sums.

**11)** Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial in this action.

Dated: May 14, 2019  
       New York, NY

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____  
    James D. Weinberger (jweinberger@fzlz.com)  
4 Times Square, 17th Floor  
New York, New York 10017  
(212) 813-5900

*Counsel for Plaintiffs*